UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

CHRISTINA CARAMORE and MICHELLE
MARTIN, individually and on behalf of all others
similarly situated,

    No.

    CLASS ACTION COMPLAINT

          Plaintiffs,

    JURY TRIAL DEMANDED

    -against-

MAIDENFORM BRANDS, INC. and
WACOAL AMERICA, INC.,

          Defendants.

-------------------------------------------------------------X

Plaintiffs, CHRISTINA CARAMORE and MICHELLE MARTIN, on behalf of themselves and all others similarly situated, for their Class Action Complaint against Defendants Maidenform Brands, Inc. ("Maidenform") and Wacoal America, Inc. ("Wacoal"), based upon personal knowledge as to their own actions and upon the investigation of counsel with respect to all other matters, complain as follows:

## I.    OVERVIEW

1.    Defendants Maidenform and Wacoal manufacture, market and sell "shapewear," which has been defined as undergarments for women who want a flawless, bulge-free silhouette. Defendants Maidenform and Wacoal use shapewear fabric produced by Nurel, S.A. (Nurel) a Spanish company located in Zaragoza, Spain,  claiming the fabric is constructed with minerals and nutrients that are absorbed by the skin and can permanently change women's body shape and skin tone. For example, Defendant Wacoal claims that that the shapewear fabric from Nurel is constructed "with embedded microcapsules containing **caffeine** to promote fat destruction;

**vitamin E** to prevent the effects of aging; **ceramides** to restore and maintain the skin's smoothness; and **retinol** and **aloe vera** to moisturize and increase the firmness of the skin."[1]

2.      The Federal Trade Commission calls such claims "about as credible as a note from the Tooth Fairy."[2]

3.      Yet Defendants make these misrepresentations in order to prey upon women's insecurities about their body images, because Defendants know that the annual revenue of the U.S. weight-loss industry is $20 billion, sales of shapewear are estimated at $1 billion annually,[3] and sales of "nutrient-infused" textiles or "cosmeto-textiles" are estimated at more than $600 million annually.[4]

4.      Defendants Maidenform and Wacoal charge as much as 50 percent more for the shapewear made with Nurel's cosmeto-textile than for equivalent non-nutrient infused shapewear – despite the fact that the purported nutrients cannot permanently cure cellulite, destroy fat, or cause weight loss.  As a result of Defendants' misrepresentations, Plaintiffs and the class have suffered out-of-pocket losses, did not receive the benefit of the bargain, and have been damaged.

5.      Nurel has trademarked its brand name "Novarel Slim" with the United States Patent and Trademark Office ("PTO"). On October 30, 2009, Nurel filed a trademark application for the name "Novarel Slim" with the PTO. The "Novarel Slim" trademark was registered on November 16, 2010.

---

[1] http://www.wacoal-america.com/shop/shapewear/new-arrivals/query_ipant/ipant-anti-cellulite-long-leg-shaper_809171.html?index=0&searchCategoryId=10052&totalResults=5&displayMarkdownsOnly=false (emphasis in original).
[2] http://www.ftc.gov/opa/2004/11/bigfatliesweep.shtm (last accessed August 26, 2013).
[3] http://online.wsj.com/article/SB10001424052748704328104574515481839938404.html
[4] Debra Cobb, "Cosmeto Textiles Resonate With Health-Conscious Consumers and Shapewear Fans," Textile Insight, at 6 (October 2012).

6.      Nurel provides its branding tags, called "hangtags," reflecting the phrase "Novarel Slim" to Defendants and other U.S.-based shapewear companies for attachment to shapewear sold in the United States. Examples follow[5]



## II.      JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual Class members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2) and (6). Plaintiffs are both citizens of the state of New York, whereas Defendants are citizens of New Jersey and Delaware for the purposes of diversity. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiffs allege that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than  New York,

---

[5] http://www.nurel.com/saludBellezaSlim.do   Last accessed November 3, 2013.

where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

Venue is appropriate in this District because Defendants reside here and/or do business within this District.

### III.    PARTIES

8.      Plaintiff CHRISTINA CARAMORE is a resident of the State of New York. Plaintiff purchased shapewear manufactured, marketed and/or sold by MAIDENFORM on or about September 3, 2013. The shapewear Plaintiff purchased was constructed with cosmeto-textile sold by Nurel under the "Novarel Slim" brand name. Plaintiff was deceived by Defendants' misrepresentations regarding the Novarel Slim technology. Plaintiff did not receive the benefit of the bargain and/or suffered out-of-pocket loss as a result of Defendants' misrepresentations and was damaged.

9.      Plaintiff MICHELLE MARTIN is a resident of the State of New York. Plaintiff purchased shapewear manufactured, marketed and/or sold by WACOAL on or about September 5, 2013. The shapewear Plaintiff purchased was constructed with cosmeto-textile sold by Nurel under the "Novarel Slim" brand name. Plaintiff was deceived by Defendants' misrepresentations regarding the Novarel Slim technology. Plaintiff did not receive the benefit of the bargain and/or suffered out-of-pocket loss as a result of Defendants' misrepresentations and was damaged.

10.     Defendant Maidenform Brands, Inc. ("Maidenform") is a Delaware corporation with its principal place of business in Iselin, New Jersey. Maidenform describes itself as "a global intimate apparel company," which "design[s], source[s] and market[s] an extensive range of intimate apparel products, including bras, panties and shapewear." According to its Annual

Report for the year ending December 31, 2012, Maidenform's sales of shapewear comprised more than 33% of its sales for the last three years.

11.     Defendant Wacoal America, Inc. ("Wacoal") is a New Jersey corporation with its principal place of business in Lyndhurst, New Jersey. Wacoal is engaged in sales of foundation garments, *i.e.* shapewear and lingerie.

## IV.     FACTS

### A.  Cellulite Is a Non-Serious Medical Condition That Cannot Be "Cured" Through Topical Applications

12.     According to the Mayo Clinic, cellulite refers to the appearance of dimpled skin on the thighs, hips, buttocks and abdomen. Cellulite is most common in areas of fat deposits and is the result of the unevenness of fatty tissue beneath the skin surface.

13.     Cellulite is caused by fibrous connective cords that tether the skin to the underlying muscle, with the fat lying between. As the fat cells accumulate, they push up against the skin, while the long, tough cords are pulling down. This creates an uneven surface or dimpling. A depiction of cellulite follows:[6]



14.     Cellulite is much more common in women than in men, and at least 8 out of 10 women have some degree of cellulite because fat is typically distributed in women in the thighs, hips and buttocks.

_____
[6] http://www.webmd.com/beauty/cellulite/ss/slideshow-cellulite-pictures-causes-myths-and-treatments

15.    While cellulite is not a serious medical condition, cellulite can be unsightly and may cause embarrassment.

16.    According to the Mayo Clinic, "[m]any devices, products and creams claim to treat cellulite. But there is little or no scientific evidence to support these claims. If you do find a cellulite treatment that improves your skin, the results aren't likely to last long term."

17.    The Mayo Clinic warns consumers that most treatments have not been proven effective in removing cellulite, including but not limited to:

> Vigorous massage. Some cellulite treatments are based on the concept that vigorous massage will increase blood flow, remove toxins and reduce excess fluid in cellulite-prone areas. One method in particular, Endermologie (also referred to as Lipomassage), uses a hand-held machine to knead the skin between rollers. You may notice a slight improvement to your skin after this treatment, but the results are typically short-lived.
>
> Mesotherapy. This procedure involves injecting a solution - which may contain a combination of aminophylline, hormones, enzymes, herbal extracts, vitamins and minerals - under the skin. This treatment can cause several unwanted effects, including infection, rashes, and bumpy or uneven skin contours.
>
> Cellulite creams. Creams that contain a variety of ingredients, such as vitamins, minerals, herbal extracts and antioxidants, are often marketed as the cure for cellulite. But no studies show that these creams offer any improvement. And in some cases, the ingredients in these products cause skin reactions or rashes.

18.    The State of California thus categorizes claims concerning the elimination of cellulite as a "Health/Medical Scam," stating:[7]

> **HEALTH/MEDICAL SCAM**
>
> A scammer sells products that cannot back their claim of being medically effective or beneficial to health.
>
> **How this scam works**

---

[7] http://www.takechargeca.ca.gov/campaigns/scams_types.shtml#health

> A scammer sells medications, vitamin supplements, exercise
> equipment or other products that claim to help you lose weight,
> clear your skin, stop snoring, eliminate cellulite, or provide other
> health or medical benefits. These products have not been proven
> safe or effective. Besides providing no real benefit, these products
> can be detrimental to your health.

19. Similarly, in 2004, the Federal Trade Commission launched "Operation Big Fat Lie," a nation-wide law enforcement sweep against six companies making false weight-loss claims, as well as claims regarding cellulite cures, in national advertisements.

**B. Nurel Claims That Its Novarel Slim Fabric Will Destroy Fat and Cellulite.**

20. Nurel manufactures, markets and sells fabric to lingerie companies, including Defendants, for use in shapewear. Nurel differentiates its fabric by claiming that the fabric is constructed with "active principles embedded in the fibres in a homogeneous way. During the garment use, principles are released providing benefits to your skin." Nurel claims that "Novarel Fibres contain thousands of microcapsules specially designed to preserve, contain and release different kinds of active principles helping your skin feel better day after day."[8]

21. Nurel claims that, based on several years of research and development, it is the "first company worldwide in developing and patenting an internal micro-encapsulation technology for Nylon fibres." Nurel explains this technology as follows:[9]

---

[8] http://www.novarel.com/technology.do.
[9] http://www.nurel.com/saludBelleza.do.



22.     Nurel claims that its Novarel Slim fabric contains the following active ingredients: caffeine, retinol and Vitamin E, as well as fatty acids and aloe vera.[10] Nurel represents that these ingredients in the Novarel Slim fabric are scientifically-proven to control cellulite and reduce fat. Nurel states:[11]



---

[10] http://www.nurel.com/saludBellezaSlim.do.
[11] http://www.nurel.com/saludBellezaSlim.do.

23. Contrary to Nurel's representations, the Novarel Slim fabric cannot and does not reduce cellulite or destroy fat permanently or long-term.

24. Nurel intends that consumers rely on and believe that the Novarel Slim fabric can reduce cellulite and destroy fat. Nurel provides its branding tags, called "hangtags," reflecting the phrase "Novarel Slim" to Defendants and other U.S.-based shapewear companies for attachment to shapewear sold in the United States.

### C. Wacoal Misrepresents That its "Anti-Cellulite iPant" Will Promote Fat Destruction

25. On January 26, 2011, Wacoal debuted its shapewear called the iPant, claiming that the iPant "works with your body to visually reduce the appearance of cellulite from your waist, hips and thighs as you move. The first in America to utilize Novarel Slim® technology in shapewear, Wacoal's iPant will help you redefine your silhouette and reshape your lower body in 28 days with lasting results."[12] Wacoal advertises its iPant as anti-cellulite:



26. Wacoal represents that its iPant "is constructed of Novarel Slim® nylon microfibers with embedded microcapsules containing **caffeine** to promote fat destruction; **vitamin E** to prevent the effects of aging; **ceramides** to restore and maintain the skin's

---

[12] http://www.prnewswire.com/news-releases/wacoal-debuts-revolutionary-ipant-114640574.html.

smoothness; and **retinol** and **aloe vera** to moisturize and increase the firmness of the skin."[13] An

example from its website provides:



27.     Wacoal advises consumers "to wear the iPant 8 hours a day, 7 days a week for 28

days," stating "Novarel Slim® test results show most women reported improved appearance, a

reduction in thigh measurement and that their clothes felt less tight." Wacoal also claims that the

active ingredients are still present after 100 washes.[14]

28.     Wacoal preys upon the insecurities of consumers by referring to its iPant product

as "HOPE ON A HANGER."[15]

---

[13] http://www.wacoal-america.com/shop/shapewear/new-arrivals/ipant-anti-cellulite-long-leg-shaper_809171.html (emphasis in original).

[14] http://www.wacoal-america.com/shop/shapewear/anti-cellulite-ipant/ipant-anti-cellulite-mid-thigh-shaper_804271.html?index=0&searchCategoryId=20001&totalResults=5&displayMarkdownsOnly=false.

[15] http://www.youtube.com/watch?feature=player_detailpage&v=1SDr84_szHU.

29.     Wacoal charges as much as 50 percent more for the iPant than for the same shapewear without the claimed fat-destroying and anti-cellulite properties. Yet Wacoal's iPant does not reduce thigh measurement or promote fat destruction as Wacoal claims. At best, consumers who purchase Wacoal's iPants receive the same body shapewear that Wacoal sells made without Novarel Slim technology.

### D. Maidenform Misrepresents That its "Instant Slimmer" Shapewear "Fights Against Cellulite"

30.     In or about March 2012, Maidenform launched its "Instant Slimmer" collection of shapewear under its Flexees brand name.[16]  Maidenform markets its Instant Slimmer collection as being constructed with Novarel Slim "yarn technology" that provides "slimming benefits" and incorporates microcapsules containing caffeine, retinol, ceramides, and other active principles.[17]

31.     Maidenform's website provides:

---

[16] http://www.nurel.com/idioma.do?idioma=en&pagina=noticias
[17] http://www.maidenform.com/new-and-now/trending-now/summer-must-haves/flexees-instant-slimmer-collection-thigh-slimmer-1358?showSearchBC=true



32.     Maidenform posted a video on its website purporting to show the Novarel Slim-

fabric "fights against cellulite." A screenshot follows:[18]

---

[18] http://www.maidenform.com/collections/collections/instant-slimmer/



33.    Similarly, Maidenform represents on retailer Macy's website that the Instant Slimmer shapewear is constructed with "[y]arn [] embedded with microcapsules containing caffeine to promote fat destruction."[19] On another retailer's website, Maidenform makes the following representations regarding the Instant Slimmer shapewear:[20]

- Fat-burning caffeine reduces appearance of cellulite
- Ceramides restore and maintain skin's smoothness
- Retinol increases the firmness of skin

34.     Maidenform charges as much as 62 percent more for its Instant Slimmer shapewear than for the same shapewear without the claimed fat-destroying and anti-cellulite properties. Yet Maidenform's Instant Slimmer shapewear cannot and does not reduce or fight against cellulite nor promote fat destruction. At best, consumers who purchase Maidenform's Instant Slimmer shapewear receive the same body shapewear that Maidenform sells made without Novarel Slim technology.

---

[19] http://www1.macys.com/shop/product/flexees-by-maidenform-shapewear-firm-control-instant-slimmer-high-waist-thigh-slimmer-1267?ID=653121.
[20] http://www.barenecessities.com/flexees-instant-slimmer-anti-cellulite-firm-control-high-waist-thigh-slimmer-1267_product.htm?pf_id=Flexees1267&cmp=bpp20

### E.  Defendants' Conduct Injured Plaintiffs And The Class Members

35.    Based on Defendants' misleading and deceptive sales scheme, Defendants were able to charge a premium for the shapewear constructed of Novarel Slim fabric over the costs of the same style shapewear made from non-nutrient infused fabric.

36.    For example, Wacoal charged $60 for an iPant thigh slimmer product made from Novarel Slim fabric compared to $40 for the same thigh slimmer product made without the deceptive claims.

37.    Similarly, Maidenform charged $38 for an Instant Slimmer thigh slimmer made from the Novarel Slim fabric, compared to $24 for the same thigh slimmer shapewear product marketed without the deceptive claims.

38.    Plaintiffs and the Class members they seek to represent suffered economic damages by purchasing Defendants' products, did not receive the benefit of the bargain, suffered out-of-pocket loss, and are entitled to a full refund for their purchases.

## CLASS ACTION ALLEGATIONS

39.    Plaintiffs bring this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Class defined as follows:

> All persons who paid, in whole or in part, for shapewear constructed with Novarel Slim fabric and manufactured, marketed or sold by Wacoal or Maidenform for personal, family or household uses.

Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' legal representatives, predecessors, successors, assigns, and employees.

40.    The definition of the Class is unambiguous.  Plaintiffs are both members of the Class they seek to represent.  The Class members can be notified of the class action through

publication and direct mailings to address lists maintained in the usual course of business by Defendants and retail clothing stores.

41.     The Class members are so numerous that their individual joinder is impracticable. The precise number of Class members is unknown at this time but, based on Defendants' reported sales figures; it is clear that the number greatly exceeds the number to make joinder possible.

42.     Common questions of law and fact predominate over the questions affecting only individual Class members.  Some of the common legal and factual questions include:

a.      Whether this Court has personal jurisdiction over Nurel;

b.      Whether Defendants' conduct as set forth herein constitutes the act, use or employment of an unconscionable commercial practice, deceptive, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in violation of the New Jersey Consumer Fraud Act;

b.      Whether New Jersey law applies to the proposed nationwide Class;

c.      Whether Defendants violated consumer protection statutes and/or false advertising statutes and/or state deceptive business practices statutes;

d.      Whether Defendants violated the common law of unjust enrichment; and

      e.     The nature and extent of damages and other remedies to which the

           conduct of Defendants entitles the Class members.

43.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class members.  Similar or identical statutory and common law violations and deceptive business practices are involved.  Individual questions, if any, pale by comparison to the numerous common questions that predominate.

44.     The injuries sustained by Plaintiffs and the Class members flow, in each instance, from a common nucleus of operative facts – Defendants' misconduct.  In each case, Defendants marketed and sold shapewear constructed from Novarel Slim fabric and misled and deceived Plaintiffs and the Class members that the shapewear had been proven to be effective for their marketed purposes of fighting cellulite and destroying fat.

45.     Plaintiffs and the Class members have been damaged by Defendants' misconduct. Plaintiffs and the Class members have paid a premium price for the shapewear, products which would not have been purchased in the absence of Defendants' marketing campaigns and deceptive scheme.

46.     Plaintiffs' claims are typical of the claims belonging to absent Class members. Plaintiffs paid for Defendants' shapewear products constructed with Novarel Slim fabric.

47.     Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs are familiar with the basic facts that form the bases of the Class members' claims.  Plaintiffs' interests do not conflict with the interests of the other Class members that they seek to represent. Plaintiffs have retained counsel competent and experienced in Class action litigation and intend to prosecute this action vigorously. Plaintiffs' counsel have successfully prosecuted many

complex Class actions, including consumer protection Class actions.  Plaintiffs and their counsel

will fairly and adequately protect the interests of the Class members.

48.     The class action device is superior to other available means for the fair and

efficient adjudication of the claims belonging to Plaintiffs and the Class members. The relief

sought for each individual Class member is small given the burden and expense of individual

prosecution of the potentially extensive litigation necessitated by the conduct of Defendant.

Furthermore, it would be virtually impossible for the Class members to seek redress on an

individual basis.  Even if the Class members themselves could afford such individual litigation,

the court system could not.

49.     Individual litigation of the legal and factual issues raised by the conduct of

Defendants would increase delay and expense to all parties and to the court system.  The class

action device presents far fewer management difficulties and provides the benefits of a single,

uniform adjudication, economies of scale and comprehensive supervision by a single court.

Given the similar nature of the Class members' claims and the absence of material differences in

the state statutes and common laws upon which the Class members' claims are based, a

nationwide Class will be easily managed by the Court and the parties.

## CAUSES OF ACTION

### COUNT I
### Violation of the New Jersey Consumer Fraud Act

50.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein and further allege as follows.

51.     At all relevant times, the New Jersey Consumer Fraud Act ("CFA") has

prohibited consumer fraud in connection with the sale or advertisement of merchandise:

> The act, use or employment by any person of any unconscionable
> commercial practice, deception, fraud, false pretense, false

promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.

*See* C.F.A. § 56:8-2.

52.     Pursuant to the CFA, Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the manufacture, promotion, and sale of the shapewear constructed with Novarel Slim fabric to Plaintiffs and the Class members.

53.     Defendants intended that Plaintiffs and the Class members rely on their materially deceptive practices and purchase the shapewear as a consequence of the deceptive practices, including Defendant's misrepresentations and omissions of material fact with respect to the fact that the shapewear could not, in fact, fight cellulite or destroy fat.

54.     Defendants' deceptive representations and material omissions to Plaintiffs and the Class members constitute unfair and deceptive acts and practices under the CFA.

55.     Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, significant sums of money from Plaintiffs and the Class members.

56.     Plaintiffs and the Class members were actually deceived by Defendant's misrepresentations.

57.     As a proximate result of Defendant's misrepresentations, Plaintiffs and the Class members have suffered ascertainable losses, in an amount to be determined at trial.

## COUNT II
## BREACH OF EXPRESS WARRANTIES

58.     Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

59.     Defendants are in the business of selling lingerie, undergarments and shapewear to consumers such as Plaintiffs and the members of the Class, including but not limited to shapewear of the kind sold to Plaintiffs and the members of the Class.

60.     Plaintiffs and the members of the Class purchased Defendants' shapewear constructed with Novarel Slim fabric.

61.     Defendants expressly warranted that the shapewear constructed with Novarel Slim fabric fights cellulite and destroys fat.

62.     The shapewear does not conform to these express representations because they do not fight cellulite or destroy fat.  Thus, Defendants breached their express warranties.

63.     As a direct and proximate result of the breach of said warranties, Plaintiffs and the Class members suffered and/or will continue to be harmed and suffer economic loss.

64.     Plaintiffs and the Class members did rely on the express warranties of the Defendants herein.

65.     Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue.

66.     Defendants' conduct breached their express warranties in violation of, among other state express warranty laws, N.J. Stat. Ann. § 12A:2-313.

67.     The above statute does not require privity of contract to recover for breach of express warranty.

68.     Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Defendants on notice thereof.

69.     As a direct and proximate result of the foregoing acts and/or omissions, Plaintiffs and the Class members have suffered damages entitling them to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

**COUNT III**
**UNJUST ENRICHMENT**

70.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further allege as follows.

71.     At all relevant times, Defendants designed, manufactured, produced, marketed and/or sold the shapewear products.

72.     Defendants have benefitted from their unlawful acts by receiving payments for the sales of the shapewear products.  Defendants knew that the shapewear products did not fight cellulite or destroy fat – but advertised that they did.

73.     Plaintiffs and the Class members conferred non-gratuitous benefits upon Defendants by paying for the shapewear.

74.     Defendants appreciated, or had knowledge of the non-gratuitous benefits conferred upon them by Plaintiffs and the Class members.

75.     Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiffs and the Class members, with full knowledge that, as a result of Defendants' unconscionable wrongdoing, Plaintiffs and the Class members were not receiving products of the high quality, nature, fitness, or value as reasonable consumers expected.  Allowing Defendants to

retain the non-gratuitous benefits Plaintiffs and the Class members conferred would be unjust and inequitable under these circumstances.

76.     Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiffs and the Class members would be unjust and inequitable, Plaintiffs and the Class members are entitled to, and hereby seek disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits in a manner established by the Court.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs and the Class members request that the Court enter an order or judgment against Defendant including the following:

a.     Certification of the action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure; appointment of Plaintiffs as the Class Representatives and appointment of their counsel as Class Counsel;

b.     Damages in the amount of monies paid for the shapewear products;

c.     Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

d.     Pre-judgment and post-judgment interest on such monetary relief;

e.     Other appropriate injunctive relief;

f.     The costs of bringing this suit, including reasonable attorneys' fees; and

g.     All other relief to which Plaintiffs and the Class members may be entitled at law or in equity.

## JURY DEMAND

Plaintiffs hereby demand trial by jury on their own behalf, and on behalf of the absent Class members, on all issues and claims presented above.

Dated: November 5, 2013

<div style="margin-left: 40%">

Respectfully Submitted,

By: //s// Andres F. Alonso (AFA-8307)
      Andres F. Alonso
      ALONSO KRANGLE LLP
      445 Broad Hollow Road
      Suite 205
      Melville, New York 11747

      39 Broadway
      35th Floor
      New York, New York 10007
      Ph: 516 350 5555
      Fax: 516 350 5554
      Email: aalonso@alonsokrangle.com

      Elizabeth A. Fegan
      HAGENS BERMAN SOBOL SHAPIRO LLP
      1144 W. Lake Street, Suite 400
      Oak Park, IL  60301
      Ph:  (708) 628-4960
      Fax: (708) 628-4950
      Email: beth@hbsslaw.com

      Steve W. Berman
      HAGENS BERMAN SOBOL SHAPIRO LLP
      1918 8th Ave.
      Seattle, WA 98101
      Ph: (206) 623-7292
      Email: steve@hbsslaw.com

</div>